Thomas C. Buchele, CSB No. 129657
E-mail: tbuchele@lclark.edu
Earthrise Law Center
10015 SW Terwilliger Boulevard
Portland OR  97219-7799
Tel: (503) 768-6736
Fax: (503) 768-6642

Margaret M. Hall, CSB No. 293699
Email: mhall@environmentaldefensecenter.org
Linda Krop, CSB No. 118773
Email: lkrop@environmentaldefensecenter.org
Environmental Defense Center
906 Garden Street
Santa Barbara, California 93101
Tel:  (805) 963-1622
Fax:  (805) 962-3152

*Attorneys for Los Padres ForestWatch*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **LOS PADRES FORESTWATCH**, a California nonprofit corporation; <br><br> Plaintiff, <br><br> vs. <br><br> **UNITED STATES FOREST SERVICE**, an agency of the United States Department of Agriculture; and **KEVIN ELLIOT**, Acting Forest Supervisor, Los Padres National Forest, in his official capacity; and **UNITED STATES FISH AND WILDLIFE SERVICE**, an agency of the United States Department of the Interior; and **STEVE HENRY**, Field Supervisor, Ventura Fish and Wildlife Office, in his | Case No. 2:18-cv-6958 <br><br> **COMPLAINT TO COMPEL AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED AND FOR VACATUR OF ILLEGAL AGENCY ACTION** <br><br> **(Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*)** |

official capacity,                     )
                                       )
Defendants.                            )
                                       )

**Jurisdiction and Venue**

1.       This Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and (g) (action arising under Endangered Species Act ("ESA") and ESA citizen suit provision) and 28 U.S.C. §§ 1331 (federal question). Plaintiff has challenged final agency actions as defined by the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(13), and subject to review under the APA, 5 U.S.C. §§ 702, 704, 706. The relief requested is proper under 5 U.S.C. § 706, 16 U.S.C. § 1540(g), and 28 U.S.C. § 2412. As required by 16 U.S.C. § 1540(g)(2), Plaintiff furnished Defendant U.S. Forest Service with written notice of its violations of the ESA more than sixty days prior to filing this complaint.

2.       Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A) because Defendants are officers or employees of the United States, and a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

**Introduction**

3.       Plaintiff Los Padres ForestWatch ("ForestWatch") seeks an order requiring compliance with binding standards established by the U.S. Forest Service, and further seeks vacatur of the arbitrary and capricious actions of both the U.S. Forest Service ("Forest Service") and U.S. Fish and Wildlife Service ("Fish and Wildlife Service") in regards to the destructive practice of unrestricted recreational target shooting in the Los Padres National Forest ("the Forest"). After making promises for over a decade to generally close most of the Forest to target shooting, in 2005 the Forest Service adopted mandatory language in its Forest Plan closing all areas of the Forest to target shooting except specific designated areas. The Forest Service reiterated that mandate in its Record of Decision ("ROD") and in its consultation regarding endangered species, but it has failed to actually do so. Plaintiff seeks an order compelling this nondiscretionary action under the APA.

Additionally, the Forest Service's standard requiring prohibition of target shooting was relied on by the Fish and Wildlife Service to support "no jeopardy" findings in its 2013 Biological Opinion ("BiOp"), prepared pursuant to the ESA Section 7 consultation requirement. Neither agency has reinitiated consultation in light of the Forest Service's failure to close the Forest to target shooting, despite a requirement to do so under the ESA. Accordingly, Plaintiff seeks an order declaring the 2013 BiOp arbitrary and capricious, and an order declaring the Forest Service in violation of its mandate under ESA Section 7 that its actions do not cause jeopardy to threatened or endangered species. In the alternative, Plaintiff seeks an order requiring the Forest Service to reinitiate consultation in light of its actions to not implement the standard prohibiting target shooting in the Forest.

4.   The Forest Service has long recognized the problems posed by uncontrolled target shooting, and committed to end dispersed target shooting in the Forest by incorporating a mandatory standard to generally close most of the Forest to target shooting in its 2005 Forest Plan and limit such target shooting to certain designated areas. The Forest Service included this standard as part of its proposed action in seeking consultation under the ESA with the Fish and Wildlife Service. The resulting 2005 BiOp, which relied on the standard for closing the Forest, was remanded following a Court determination that it was not compliant with the ESA. The Court ordered interim relief, including ordering a portion of the Forest closed to target shooting, during the remand period. Following the remand, the Fish and Wildlife Service issued a new BiOp in 2013. The 2013 BiOp again expressly cited the standard mandating prohibitions on target shooting, and relied on this standard in its conclusion of no jeopardy with respect to numerous threatened or endangered species, including the California condor. The Forest Service also expressly acknowledged this prohibition in the ROD adopting the Forest Plan and accepting the 2005 BiOp. However, more than ten years later, it has yet failed to take any

4

action to restrict target shooting, as required by the Forest Plan. Plaintiff seeks compliance with the ESA, the National Forest Management Act ("NFMA"), and the APA with respect to the Service's failure to do so. First, ForestWatch seeks to compel the Forest Service to close the Forest to target shooting in undesignated areas, in compliance with the Forest Plan, the BiOps (2005 and 2013), and the ROD.

5.     Second, the Forest Service adopted a BiOp in 2013 that assumes and relies on the implementation of the standard prohibiting target shooting to meet the Forest Service's obligations under the ESA. The Fish and Wildlife Service in this 2013 BiOp relied upon the standard in the Forest Plan to close the Forest to dispersed target shooting in finding "no jeopardy," despite the fact that it was aware that the Forest still remained open to target shooting. The 2013 BiOp was therefore facially flawed. ForestWatch seeks an order declaring that the Forest Service has violated and is violating its substantive duties under the ESA in relying on the 2013 BiOp and further injunctive relief to comply with the ESA.

6.     Third, the Fish and Wildlife Service issued the facially flawed 2013 BiOp. ForestWatch seeks an order declaring that the 2013 BiOp is arbitrary, capricious, and not in accordance with the ESA and an order setting aside the unlawful BiOp.

7.     Fourth, the Forest Service has failed to reinitiate consultation under the ESA on its 2005 Forest Plan. An agency must reinitiate consultation when, *inter alia*, the agency subsequently modifies the action or new information reveals the action may have effects not previously considered. 50 C.F.R. § 402.16 (2015). Neither the Forest Service nor Fish and Wildlife Service have reinitiated consultation in light of the Forest Service's failure to implement the standard requiring it to close the Forest to dispersed target shooting. This failure to close the Forest represents either a modification of the action or new information.

ForestWatch seeks an order requiring the Forest Service to reinitiate consultation in compliance with the ESA and its implementing regulations.

8.      Fifth, the Fish and Wildlife Service has likewise failed to reinitiate consultation regarding the 2005 Forest Plan based on the Forest Service's failure to implement the standard requiring it to close the Forest to target shooting, which the Fish and Wildlife Service relied upon to make its initial "no jeopardy" finding. ForestWatch seeks an order requiring the Fish and Wildlife Service to reinitiate consultation in compliance with the ESA and its implementing regulations.

9.      For these reasons, this action seeks (1) a declaration that the Forest Service violated NFMA in failing to close the forest to dispersed shooting and an order compelling the Forest Service to do so, in accordance with the mandatory, non-discretionary standard it adopted in its Forest Plan; (2) an order setting aside the 2013 BiOp and compelling the Fish and Wildlife Service to complete a lawful BiOp for the 2005 Forest Plan; (3) a declaration that the 2013 BiOp was flawed and that the Forest Service unreasonably relied upon this flawed BiOp; (4) a declaration that both the Forest Service and the Fish and Wildlife Service violated their substantive duty under the ESA in failing to reinitiate consultation, and injunctive relief requiring them to reinitiate consultation on the 2005 Forest Plan.

## Parties

10.      Plaintiff LOS PADRES FORESTWATCH is an independent nonprofit organization based in Santa Barbara, California that works to protect the Los Padres National Forest. ForestWatch's mission is to protect and restore the natural and cultural heritage of public lands along the Central Coast through legal advocacy, scientific collaboration, and community outreach. ForestWatch focuses its work throughout the Los Padres National Forest and nearby public lands. To further its mission and protect the interests of its members and supporters in

preserving public lands, ForestWatch monitors forest conditions and activities in the Los Padres National Forest and reviews and comments on proposed Forest Service projects. ForestWatch also organizes habitat restoration and forest stewardship projects using crews of volunteers, making the forest a better place for all to enjoy and visit. These projects include organizing surveying groups and cleanup events at frequent target shooting sites in Los Padres National Forest.

11.    ForestWatch's members plan to continue using and enjoying the Forest frequently and on an ongoing basis.

12.    ForestWatch works to address the problem of trash and debris left behind at target shooting sites throughout the forest, pictured below.



13.    Collectively, more than 670 ForestWatch volunteers have contributed 5,000+ hours removing more than 25,400 pounds of trash from more than 30 key sites. ForestWatch staff and volunteers have also surveyed more than 300 miles of roads throughout the Los Padres National Forest to document the impacts of target shooting. ForestWatch also negotiated a prohibition on target shooting in the

sensitive Cherry Creek area. The Forest Service's failure to curtail dispersed target shooting injures the aesthetic, recreational, and scientific interests of ForestWatch members because unmanaged shooting sites are a public health and safety hazard, an eyesore, and damage the plants and wildlife ForestWatch members visit the Forest to see.

14.     ForestWatch members frequently recreate in the Los Padres National Forest, and come to picnic, backpack, hike, camp, and birdwatch, among other activities. ForestWatch members are directly harmed by the failure to manage target shooting. They are concerned about the health impacts to the wildlife, flora, and habitat of the Forest, particularly about lead poisoning to California Condors, lead from spent bullets leeching into waterways, and the use of trees as targets, pictured below.




15.     ForestWatch members are concerned for their own personal safety when they travel near unregulated target shooting sites within the Los Padres National Forest. Several members frequent several high-traffic areas, like routes along California Scenic Highway 33, Lockwood Valley Road, Happy Canyon Road, and Cuesta Ridge, all of which are directly adjacent to known, undesignated target shooting areas. Several ForestWatch members have visited such areas within the Forest and have seen active, unregulated target shooting, which put them in fear for their safety.

16.     ForestWatch members are also worried about numerous wildfires caused by target shooting. According to U.S. Forest Service data, shooting has caused fifty-three wildfires in the Los Padres National Forest burning a combined 74,000 acres, including the massive 1997 Logan Fire in San Luis Obispo County and the 2002 Wolf Fire in Ventura County. Sparks are created by materials in certain types of bullets or targets, including flammable propane tanks or other commercially-available "exploding targets." This threatens public safety and results in the destruction of vast areas of the Forest that ForestWatch members cherish.



17.     The Forest Service and Fish and Wildlife Service's failure to reinitiate ESA consultation, and Fish and Wildlife Service's production of a flawed BiOp upon which the Forest Service unlawfully relies, also harms ForestWatch's members. This flawed analysis failed to ensure the protection of ESA-listed species such as the California condor, California red-legged frog, unarmored threespine stickleback, Smith's blue butterfly, and Southern mountain buckwheat. The Environmental Impact Statement ("EIS") for the 2005 Forest Plan acknowledges target-shooting-related threats to listed species including, but not limited to, the California condor, Arroyo toad, California red-legged frog, Mountain yellow-legged frog, Nelson's bighorn sheep, and Peninsular bighorn sheep. The EIS also acknowledges target-shooting-related harms to non-listed species including, but not limited to the Golden eagle, Turkey vulture, Coast range newt, and Bald eagle. This failure to protect Forest species injures ForestWatch members' aesthetic, recreational, and scientific interests.

18.     ForestWatch has an organizational interest in the proper and lawful management of the Forest. ForestWatch regularly organizes members to volunteer to clean up trash and debris from target shooting. The organization seeks declaratory and injunctive relief.

19.     The above-described interests of Plaintiff ForestWatch are, have been, and, unless the requested relief is granted, will continue to be injured by Defendants' failure to limit target shooting in the Forest and to comply with the ESA to protect forest species. The relief requested in this lawsuit will redress Plaintiff's injuries because it will ensure that target shooting is managed so as to protect public health and safety, environmental health, and forest species.

20.     Defendant UNITED STATES FOREST SERVICE is a federal agency within the U.S. Department of Agriculture, charged with administering the Forest. The Forest Service is an agency within the meaning of the APA. 5 U.S.C. § 551(1).

21.     Defendant KEVIN ELLIOT is an employee of the U.S. Forest Service, and is the Acting Forest Supervisor for the Los Padres National Forest. Defendant Elliot is sued in his official capacity only.

22.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is a federal agency within the U.S. Department of the Interior, and is charged with administration of the ESA as it relates to inland species. The U.S. Fish and Wildlife Service is an agency within the meaning of the APA. 5 U.S.C. § 551(1).

23.     Defendant STEVE HENRY is an employee of U.S. Fish and Wildlife Service, and is the Field Supervisor of the Ventura, CA Fish and Wildlife Office. Defendant Henry is sued in his official capacity only.

### Legal Background

A. National Forest Management Act

24.     NFMA was passed in 1976 to "promote a sound technical and ecological base for effective management, use, and protection of the Nation's renewable resources." 16 U.S.C. § 1600(4). In passing NFMA, Congress noted that the Forest Service "has both a responsibility and an opportunity to be a leader in assuring that the Nation maintains a natural resource conservation posture that will meet the requirements of our people in perpetuity." *Id*. § 1600(6). To carry out this responsibility and purpose, NFMA requires the Forest Service to create forest plans and renew them every fifteen years. 16 U.S.C. § 1604(f).

25.     Forest Service regulations define different components of forest plans. 36 C.F.R. § 219.7(e).  These components range from "desired conditions" and "guidelines," which are broad goals for the Plan area, and general, non-binding constraints to further those goals, to "standards" which are "mandatory constraint[s] on project and activity decisionmaking, established to help achieve or maintain the desired condition or conditions, to avoid or mitigate undesirable effects, or to meet applicable legal requirements." *Id.* § 219.7(e)(1).

26. Forest Service regulations make clear that standards create concrete obligations, and may be employed to meet legal obligations. *Id.* § 219.7(e)(1)(iii).

27. After a forest plan is developed, all subsequent Forest Service actions taken in that forest must be consistent with the forest plan. 16 U.S.C. § 1604(i).

B. Endangered Species Act

28. The ESA was enacted to provide a "means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," 16 U.S.C. § 1531(b), and "a program for the conservation of such endangered species and threatened species." *Id.* It requires "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." *Id.* § 1532(3). The Supreme Court has described the ESA as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).

29. Section 7 of the ESA requires that a federal agency (the "action agency," here the Forest Service), in consultation with another agency (the "consulting agency," here the Fish and Wildlife Service), insure that any action it authorizes, funds, or carries out "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." 16 U.S.C. § 1536(a)(2). After consultation has concluded, the consulting agency is required to provide "a written statement setting forth the Secretary's opinion, and a summary of the information on which the opinion is based, detailing how the agency action affects the species or its critical habitat." *Id*. § 1536(b)(3)(A). This written statement prepared by the consulting agency is known as a Biological Opinion.

30. The ESA consultation regulations require, in pertinent part, the reinitiation of formal consultation by the acting federal agency and by the Fish and

Wildlife Service as consulting agency, "where discretionary Federal involvement or control over the action has been retained or is authorized by law and: . . . (b) if new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered; [or] (c) if the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion." 50 C.F.R. § 402.16 (2015). When an action agency fails to reinitiate consultation when reinitiation is required under § 402.16, the BiOp for the proposed action becomes invalid. *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 698 F.3d 1101, 1115 (9th Cir. 2012) (citing ESA Handbook, 4-23).

Violation of ESA section 7's procedural requirements is, in effect, a violation of the ESA's substantive provisions. *See Thomas v. Peterson*, 753 F.2d 754, 764 (9th Cir. 1985) ("If a project is allowed to proceed without substantial compliance with those procedural requirements, there can be no assurance that a violation of the ESA's substantive provisions will not result."), *abrogated on other grounds Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075 (9th Cir. 2015).

31.     Individual citizens may enforce ESA violations in order "to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged . . . to be in violation of any provision of [the ESA] or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). Citizens must provide sixty days' notice of any alleged violations to the alleged violator and the Secretary of the Interior. *Id.* § 1540(g)(2)(A)(i). After sixty days have passed, citizens may sue in federal district court to enforce against violations of the ESA. *Id.* § 1540(g)(3)(A).

C.  Administrative Procedure Act

32.     Section 706(1) of the APA provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. §

706. This provision applies to all discrete actions an agency is required to make. *Vietnam Veterans of Am. v. Central Intelligence Agency*, 811 F.3d 1068, 1075 (9th Cir. 2015).

33.     Additionally, the APA provides that courts shall "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

34.     "Agency action" includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent denial thereof, or failure to act." 5 U.S.C. § 551 (13). A "rule" is an "agency statement of . . . future effect designed to implement, interpret, or prescribe law or policy;" an "order" is defined as "a final disposition … in a matter other than rule making." *Id*. §§ 551(4), (6).

## Factual Background

A. Impacts of Dispersed Target Shooting

35.     While recreational target shooting can be a low-impact activity when done responsibly in designated, well-managed areas, dispersed target shooting in the Forest causes issues such as lead contamination of soil and water, litter and hazardous waste, vandalism, wildfires, stray bullets, damage to trees and other vegetation, and wildlife poisoning. ForestWatch has documented these impacts in Los Padres National Forest through survey and study. ForestWatch published its findings in a whitepaper. *See* LOS PADRES FORESTWATCH, FOREST IN THE CROSSHAIRS: THE ENVIRONMENTAL & HEALTH IMPACTS OF TARGET SHOOTING IN THE LOS PADRES NATIONAL FOREST 2 (2016) [hereinafter "Forest in the Crosshairs"]. ForestWatch shared Forest in the Crosshairs with the Forest Service, including Forest Supervisor Bob Baird in March, 2016, and to Acting Forest Supervisor Teresa Benson and Deputy Forest Supervisor Ken Heffner in October, 2017.

36.   The Forest Service is well aware of the threats posed by dispersed target shooting. The Forest Service described these threats in the EIS for its 2005 Forest Plan:

> Shooting of animals and plants; vegetation disturbance and destruction; mortality of individuals by off-route driving; Litter (nuisance species/ingestion of plastic/animal entrapment); Noise disturbance leading to short-term displacement; Cleared parking/shooting areas contribute to soil erosion and sedimentation; Disturbance and abandonment of habitat; Erosion and sedimentation from heavily utilized shooting lanes; Habitat loss from invasive nonnative plants in disturbed areas; Trampling of plants and animals; Increased threat of destructive wildland fires; [and] Lead shot poisoning with animal consumption.

U.S. FOREST SERVICE, FINAL ENVIRONMENTAL IMPACT STATEMENT FOR THE LAND MANAGEMENT PLANS FOR ANGELES NAT'L FOREST, CLEVELAND NAT'L FOREST, LOS PADRES NAT'L FOREST, AND SAN BERNARDINO NAT'L FOREST, Vol. 2, 96 (2005) [hereinafter "2005 EIS"].

37.   Trampling, shooting at native vegetation, wildfires, soil contamination, and off-road vehicle trespass associated with dispersed target shooting have resulted in the removal of several hundred acres of native vegetation. Shooters frequently use trees as targets, causing them to die and fall. Forest in the Crosshairs at 4–5, 19.

38.   Toxins and heavy metals from bullets, targets, and electronic hazardous wastes used as targets leach into the soil and can contaminate nearby streams and aquifers. *Id.* at 5. The most common such pollutant is lead from spent bullets. *Id.*

39.   Lead corrodes into small particles that can be inhaled or break down into soil and nearby waters. *Id.* at 6. Lead is hazardous to both humans and wildlife, causing adverse effects to the central nervous system, cardiovascular system, kidneys, and immune system. *Id.* at 6, 8.

40.     Wildlife can ingest lead bullets, mistaking them for food. *Id*. at 8. Lead particles can also enter streams and lakes, where they are ingested by aquatic species. *Id*. Impacts to wildlife can include decreased survival, behavioral changes, and impaired reproduction. *Id*.

41.     Target shooting may lead to negative effects to species-at-risk and biodiversity, including damage or death of animal and plant species and degradation of habitat. 2005 EIS at vol. 1, p. 344–49. The EIS lists several at-risk species as being threatened by unauthorized shooting. The EIS acknowledges target-shooting-related threats to ESA-listed species including, but not limited to, *Dodecahema leptoceras*, California condor, Arroyo toad, California red-legged frog, Mountain yellow-legged frog, Nelson's bighorn sheep, and Peninsular bighorn sheep. *Id*. at 162, 173–76, 367.

42.     The EIS also discusses target-shooting-related harms to non-listed species including, but not limited to Golden eagle, Turkey vulture, Coast range newt, and Bald eagle. *Id*. at 174, 367–68.

43.     Unauthorized target shooting affects condors when "carcasses and lead shot are left in the field." *Id*. at 405. Additionally, "poisoning and other physical ailments can occur when animals and birds ingest lead shot or fragments . . . and the spent ammunition and trash left on the ground." *Id*. at 345–46.

44.     Unrestricted target shooting also results in damage to public facilities by using signs, restrooms, and other Forest infrastructure as targets, resulting in hundreds of thousands of dollars worth of damage to public property in the Forest, and a loss of facilities for recreators in the area. Forest in the Crosshairs, at 10–11.

45.     Target shooting is also a substantial fire hazard and public safety risk when left unrestricted. Target shooting caused fifty-three wildfires in the Forest between 1992 and 2016. *Id*. at 12. The two largest fires, which burned a total of 71,135 acres, cost more than $19 million to extinguish. *Id*. Some of these fires

were caused by the use of "exploding targets" such as illegal fireworks or propane canisters, or by bullets striking rocks or metal targets. *Id*. at 14.

46.    Consistent with its practice for at least the past several years, on July 3, 2018, because of increased fire hazards, the Forest Service issued an Order prohibiting the discharge of all firearms in the Los Padres National Forest, except at designated target ranges. The Forest Service's Order indicates that, as it has done in the past, this restriction on discharging firearms will be partially lifted in August and October of 2018 in certain areas of the Forest for specific types of hunting and will be completely lifted in late autumn of 2018 at the end of the fire season. Completely lifting this Order and thereby allowing unrestricted target shooting outside of specific designated areas at the end of the fire season, as the Forest Service has done for the past several years and intends to do again in 2018, violates Standard 36 of the Forest Plan. The fact that the Forest Service is able to issue this type of forest-wide prohibition on discharging firearms establishes that there is no budgetary constraint, express or implied, that prevents the Forest Service from implementing Standard 36 on a permanent basis as the Forest Plan requires.

47.    Target shooting also poses public safety threats in Los Padres National Forest, because many of the most frequented sites are located within 150 yards of highly-trafficked public use areas like highways and campgrounds. *Id*. at 18.

48.    As of 2016, ForestWatch had identified a total of ninety-four unmanaged target shooting sites in the Forest. *Id*. at 23. Twenty-nine of these sites were within fifty yards of a river or stream, ten sites were within 150 yards of a campground, and eight sites contained electronic and hazardous wastes. *Id*.

B.  The Forest Plan and Standard 36

49.     In September 2005, the four National Forests of Southern California conducted a combined revision of their collective land management plans. That process included forest-specific application of new provisions. Standard 36, discussed further below, applies to all forests but lists separate designated target shooting sites for each Forest. The Forest Service revised the Land Management Plan: Southern California National Forests Vision ("Forest Plan—Part 1"), the Land Management Plan: Los Padres National Forest Strategy ("Forest Plan—Part 2"), and the Land Management Plan: Design Criteria for the Southern California National Forests – Angeles National Forest, Cleveland National Forest, Los Padres National Forest, San Bernardino National Forest ("Forest Plan—Part 3"), reflecting concerns about the adverse effects of target shooting.

50.     The Los Padres Forest Plan addresses target shooting with a mandatory standard, not a guideline, or mere desired condition, as Forest Service regulations permit for forest plans. *See* 36 C.F.R. § 219.7(e)(1)(iii).

51.     In particular, the revised Forest Plan purports to address these many negative effects of target shooting by way of Standard 36, which states as follows:

> Recreational target shooting will only be allowed in designated areas and ranges. Shooters shall remove their targets and spent shells when departing designated shooting areas. Shooters shall not use paintballs or other forms of ammunition that would result in visible residue except where authorized in ranges that operate under special-use permit.

U.S. FOREST SERVICE, LAND MANAGEMENT PLAN: PART 3 DESIGN CRITERIA FOR THE SOUTHERN CALIFORNIA NATIONAL FORESTS – ANGELES NATIONAL FOREST, CLEVELAND NATIONAL FOREST, LOS PADRES NATIONAL FOREST, SAN BERNARDINO NATIONAL FOREST 9 (2005) [hereinafter "Forest Plan—Part 3"].

52.     In Table 490 (included below), the Forest Plan specifically lists the designated sites where target shooting is allowed, and states that the rest of the

Forest "is generally closed to recreational shooting," with possible future sites managed in accordance with Standard 36.

//

//

Table 490. Designated Shooting Areas - Los Padres National Forest

| Component | Shooting Areas |
|---|---|
| Concession-Operated Sites | None |
| Permitted Gun Clubs: Limited or No Public Access | Winchester Gun Club<br>Ojai Gun Club |
| Designated Shooting Sites by Forest Order (Other Shooting Restrictions May Apply) | 3 sites along Camino Cielo |
| Remainder of Forest | The rest of the Forest is generally closed to recreational shooting although sites have been identified where future recreational shooting may be allowed under managed conditions per Standard S36. |

53.     In September of 2005, the Forest Service issued a ROD adopting the Forest Plan; This ROD specifically adopted Standard 36 and indicated the Forest Service's clear intention to close the Forest to target shooting. U.S. DEPT. OF AGRIC., U.S. FOREST SERV., PACIFIC S.W. REGION, RECORD OF DECISION LOS PADRES NAT'L FOREST LAND MGMT. PLAN, 10 (2005).

54.     Standard 36 is included in the revised and currently applicable forest plans for the Angeles National Forest, the Cleveland National Forest, the San Bernardino National Forest and the Los Padres National Forest. However, the Los Padres National Forest is the only one of those four national forests where Standard 36 currently applies but the Forest Service nevertheless allows unrestricted recreational target shooting outside of designated shooting areas. The Forest Service manages the other three national forests where Standard 36 applies as closed to recreational target shooting outside of specifically designated areas.

55.     In 2013, the Forest Service issued a supplemental EIS ("SEIS") for the four Southern California Forest Plans concerning proposed amendments relating to roadless area management and monitoring, following a 2011 Settlement Agreement. While the 2013 SEIS does not purport to alter Standard 36, it

acknowledges that "there have been no changes since the LMP was issued in 2006. The Forest is mostly open without special restrictions. There are two gun clubs under permit and a few designated recreational target shooting areas." U.S. FOREST SERVICE, FINAL SUPPLEMENTAL ENVIRONMENTAL IMPACT STATEMENT: SOUTHERN CALIFORNIA NATIONAL FORESTS LAND MANAGEMENT PLAN AMENDMENT 95 (2013).

C. The 2005 and 2013 Biological Opinions

56.     In September 2005, the FWS concluded ESA consultation on the 2005 Forest Plan by issuing its BiOp. The Forest Service had included Standard 36, and the proposal to close the Forest to target shooting except for the specifically enumerated sites, in its proposed action subject to consultation under the ESA. Although the 2005 BiOp did not conclude that the Forest Plan would avoid all take, the BiOp nonetheless did not include an Incidental Take Statement ("ITS"). ForestWatch subsequently brought suit against the Fish and Wildlife Service and Forest Service for failure to issue an ITS in the 2005 BiOp. *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 623 F.Supp.2d 1044, 1044 (N.D. Cal. 2009). The Court ruled that the 2005 BiOp violated the ESA. *Id.* at 1055.

57.     To remedy the ESA violations of the 2005 BiOp, the Court ordered a revised BiOp. *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, Case No. 08-cv-01278-EMC, Dkt. # 59 (Jun. 28, 2011). To ensure wildlife and habitat were sufficiently protected during the remand period, the Court also ordered several protective measures, including ordering the Forest Service to close an area of the Los Padres National Forest to target shooting. *See Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, Case No. 08-1278 EMC, 2011 WL 6813200, at *2 (N.D. Cal. Dec. 28, 2011) (discussing Order on reconsideration).

58.     In 2013 FWS issued a new BiOp for the amended Forest Plans. The 2013 BiOp goes into greater depth and discussion of both the effects of target shooting on plant and animal species, as well as reliance on Standard 36 as a mitigating factor that will avoid adverse effects. Under the heading "Programs Likely to Adversely Affect Listed and Candidate Species," and the sub-heading "General Effects on Plants," the 2013 BiOp states that direct impacts include "trampling and habitat destruction from associated activities (e.g., . . . target shooting, and trash dumping)." U.S. FISH AND WILDLIFE SERVICE, PROGRAMMATIC BIOLOGICAL OPINION FOR THE REVISED LAND MANAGEMENT PLANS FOR THE FOUR SOUTHERN CALIFORNIA NATIONAL FORESTS, CALIFORNIA 22 (2013) [hereinafter "2013 BiOp"]. Under the heading "General Effects on Animals," the 2013 BiOp states that target shooting can result in the shooting of a listed species, and that a "more significant potential indirect effect" of target shooting is lead poisoning. *Id.* at 23.

59.     The 2013 BiOp also discusses the effects of the Forest Plan to the Unarmored threespine stickleback stating that "the Forest Service proposes to minimize adverse effects . . . by applying BMPs and standards that would reduce the likelihood of mortality and injury to the species," and lists Standard 36 as one such standard. *Id.* at 41. The same is true for the California red-legged frog. *Id.* at 66.

60.     With respect to Smith's blue butterfly, the 2013 BiOp lists Standard 36 as one of the standards that would reduce the likelihood of mortality and injury, and specifically under "Special Use Permit Administration" as a measure that is especially applicable "to minimize the administration of special use permits." *Id.* at 202.

61.     The 2013 BiOp states that 1,803 acres of California condor habitat is in areas where concentrated dispersed recreation (which includes target shooting)

is most likely to occur. *Id.* at 103. The BiOp discusses the effects of target shooting on California condors, which it describes as posing "a major health risk." *Id.* It notes that "the Forest Service proposes to minimize adverse effects to the California condor and its occupied and critical habitat from recreation management by applying BMPs and standards that would reduce the likelihood of mortality and injury to the species and adverse modification of its critical habitat." *Id.* at 103. Standard 36 is relied on specifically to conclude that the Forest Plan will not cause jeopardy to the listed California condor: "Standard 36 would allow recreational target shooting only in designated areas and would require shooters to remove their spent shells and targets. These minimization measures would also reduce the likelihood of adverse effects to California condor critical habitat." *Id.*

62.     The 2013 BiOp again cites Standard 36 in determining that impacts to Southern mountain buckwheat will be minimized, in part because "target shooting will be restricted to designated areas under standard 36 and should help limit impacts due to dispersed recreation." *Id.* at 240.

63.     For each of these species, the Fish and Wildlife Service expressly noted adverse effects from target shooting. For each of these species, the Fish and Wildlife Service made a no jeopardy determination. This determination was based on an adverse effects analysis, which assumed the full implementation of the Forest closure to unmanaged target shooting as prescribed by Standard 36. The 2013 BiOp lists the reasons for each finding of no jeopardy, and for each of these species the reasons for finding no jeopardy explicitly included Standard 36.

64.     The Forest Service relied on the 2013 BiOp to fulfill its obligations to consult under section 7 of the ESA. The Forest Service continues to rely on the 2013 BiOp to ensure that the implementation of the 2005 Forest Plan does not cause jeopardy to listed species or adverse modification to critical habitat as required by section 7 of the ESA.

65.     The Forest Service has not implemented the mandatory Standard 36 to close the Los Padres National Forest, outside of the specified areas, to dispersed target shooting, and the Forest Service does not manage the Forest as closed to recreational target shooting outside of designated target shooting areas.

## Claims

A. First Claim for Relief: NFMA and APA Violations
(Against the U.S. Forest Service and Defendant Kevin Elliot)
Failure to Close the Forest to Dispersed Target Shooting; 16 U.S.C. § 1604(i) and 5 U.S.C. § 706(1)

66.     Plaintiff ForestWatch hereby incorporates by reference all of the preceding paragraphs.

67.     In the 2005 Forest Plan, the Forest Service adopted Standard 36, which requires that recreational target shooting be permitted only in designated areas, and requires shooters permitted by the Forest Service to remove targets and spent ammunition, and refrain from using certain ammunition.

68.     Recreational target shooting restrictions and limitation to only designated areas is a standard, defined by Forest Service regulation as a mandatory constraint on Forest Service decisionmaking. 36 C.F.R. § 219.7(e)(1)(iii).

69.     The 2005 Forest Plan specifically cites two gun clubs and three other particular sites as designated for recreational shooting, but lists the remainder of the Forest as closed to recreational shooting.

70.     The Forest Service issued its ROD in 2005, adopting the Forest Plan. The ROD specifically addresses Standard 36 and further reiterates the requirement to close the Forest to target shooting.

71.     The Forest Service included Standard 36, and the proposal to close the Forest to target shooting except for the specifically enumerated sites, in its proposed action subject to consultation under the ESA.

23

72.     The Forest Service still has not closed the Los Padres National Forest to recreational target shooting, violating the mandatory Standard 36, and in contravention of the Forest Plan. Failure to take mandatory actions required by the Forest Plan is a violation of the NFMA. 16 U.S.C. § 1604(i).

73.     A closure order prohibiting recreational target shooting except in designated areas is a discrete action that can be compelled under the APA, 5 U.S.C. § 706(1).

74.     Defendant Forest Service's failure to close the Forest to dispersed target shooting, in compliance with Standard 36, constitutes agency action unlawfully withheld or unreasonably delayed  within the meaning of the APA, 5 U.S.C. § 706(1).

B.  Second Claim for Relief: ESA and APA Violations
(Against the U.S. Fish and Wildlife Service and Defendant Steve Henry)
Unlawful Issuance of 2013 BiOp, in violation of the ESA, 16 U.S.C. § 1536; action arbitrary, capricious, and otherwise not in accordance with law, as provided by the APA, 5 U.S.C. § 706(2)(A)

75.     Plaintiff ForestWatch hereby incorporates by reference all of the preceding paragraphs.

76.     The ESA imposes a duty on the U.S. Fish and Wildlife Service to insure that federal actions are not likely to jeopardize listed species or result in the destruction or adverse modification of critical habitat. 16 U.S.C. § 1536(a)(2).

77.     The ESA's implementing regulations define jeopardy to an endangered or threatened species as "an action that reasonably would be expected . . . to reduce appreciably the likelihood of both the survival and recovery of a listed species." 50 C.F.R. § 402.02 (2015).

78.     In meeting the duty to prevent jeopardy, each agency is required to use the "best scientific and commercial data available." 16 U.S.C. § 1536(a)(2).

79.     The Forest Plan is likely to jeopardize listed species such as the California Condor unless the Forest Service implements Standard 36. The Fish and

Wildlife Service found no jeopardy to Forest species in the 2013 BiOp, in part because it found that Standard 36 would mitigate the adverse impacts to species.

80.     Fish and Wildlife Service's reliance upon Standard 36 in the 2013 BiOp, despite the fact that implementation was seven years overdue, was arbitrary, capricious and not in accordance with Section 7(a)(2) of the ESA and implementing regulations, as provided by the APA, 5 U.S.C. §706(2)(A).

C. <u>Third Claim for Relief: ESA Violations</u>
(Against the U.S. Forest Service and Defendant Kevin Elliot)
<u>Reliance Upon a Flawed Biological Opinion; 16 U.S.C. § 1536(a)(2), (d)</u>

81.     Plaintiff ForestWatch hereby incorporates by reference all of the preceding paragraphs.

82.     The ESA imposes a duty on the Forest Service to insure that federal actions are not likely to jeopardize listed species or result in the destruction or adverse modification of critical habitat. 16 U.S.C. § 1536(a)(2).

83.     In meeting the duty to prevent jeopardy, each agency is required to use the "best scientific and commercial data available." *Id.*

84.     As set forth above, the 2013 BiOp is legally flawed and does not meet the consultation requirements under the ESA. As a result, the Forest Service has not met its legal requirement under the ESA to complete consultation and insure its actions do not jeopardize listed species or result in the destruction or adverse modification of critical habitat. *Id.*

85.     Reliance by the Forest Service on the legally flawed 2013 BiOp for the Forest Plan violates the ESA. *Id.*

86.     The Forest Service's failure to complete adequate consultation under section 7 of the ESA prior to implementing the Forest Plan also constitutes the irretrievable commitment of resources through its implementation of the Forest Plan in violation of section 7(d) of the ESA. *Id.* § 1536(d).

D. <u>Fourth Claim for Relief: ESA Violations</u>

(Against all Defendants)
Failure to Reinitiate Consultation on Forest Plan to Insure Against Jeopardy; 16
U.S.C. § 1536(a)(2)

87.     Plaintiff ForestWatch hereby incorporates by reference all of the preceding paragraphs.

88.     In September, 2005, the Forest Service issued a ROD adopting the 2005 Forest Plan. The 2013 BiOp included a finding of "no jeopardy" to listed species and "no destruction or adverse modification" of critical habitat for the Forest Plan. Those findings were in part based upon the implementation of Standard 36, and the avoidance of harm to species or habitat by closure of the Forest to recreational target shooting.

89.     An agency must reinitiate consultation where, *inter alia,* the action is modified in a way not previously considered, or new information reveals that the action may have effects not previously considered. 50 C.F.R. § 402.16.

90.     These regulations impose an obligation on both the action agency (here the Forest Service) and the consulting agency (here the Fish and Wildlife Service) to reinitiate consultation when such modification or new information occurs. *Id.*

91.     The Forest Service has implemented the Forest Plan since 2005, but has not implemented Standard 36 or closed the Forest to recreational target shooting as contemplated by both the Forest Plan and the 2013 BiOp.

92.     The Forest Service's failure to close the Forest as required by Standard 36 constitutes either new information or a modification of the action requiring the reinitiation of consultation pursuant to 50 C.F.R. § 402.16.

93.     The Forest Service has failed to insure against jeopardy by failing to reinitiate consultation on its failure to implement Standard 36, in violation of 16 U.S.C. § 1536(a)(2), and 50 C.F.R. § 402.16.

26

94.     The Fish and Wildlife Service has failed to fulfill its consultation mandate by failing to reinitiate consultation on the Forest Service's failure to implement Standard 36 of the 2005 Forest Plan, in violation of 16 U.S.C. § 1536(a)(2), and 50 C.F.R. § 402.16.

### **Request for Relief**

WHEREFORE, Plaintiff ForestWatch respectfully requests that this Court:

95.     Declare that the Forest Service violated NFMA, 16 U.S.C. § 1604(i), by unlawfully withholding or unreasonably delaying implementation of Standard 36, under which the Forest should be closed to dispersed target shooting;

96.     Order the Forest Service to implement Standard 36 and close the Forest, or manage the Forest as closed, to dispersed target shooting except in designated areas;

97.     Declare that Fish and Wildlife Service's conclusion in the 2013 BiOp that the 2005 Forest Plan is not likely to jeopardize ESA-listed species or result in the destruction or adverse modification of their critical habitat was arbitrary, capricious, and otherwise not in accordance with the law, under the APA, 5 U.S.C. § 706(2)(A);

98.     Set aside the 2013 BiOp and accompanying ITS;

99.     Declare that the Forest Service failed to reinitiate consultation on the 2005 Forest Plan, as required by ESA section 7(a)(2) and 50 C.F.R. § 402.16 (2015);

100.    Declare that the Fish and Wildlife Service failed to reinitiate consultation on the 2005 Forest Plan, as required by ESA section 7(a)(2) and 50 C.F.R. § 402.16 (2015);

101.    Provide injunctive relief requiring the Forest Service and the Fish and Wildlife Service to reinitiate the consultation process on the 2005 Forest Plan;

102.   Declare that the Forest Service unlawfully relied on the 2013 BiOp to meet its duty to prevent jeopardy under the ESA, and order the Fish and Wildlife Service to rescind the 2013 BiOp and accompanying ITS and to prepare a new biological opinion for the 2005 Forest Plan that complies with the ESA;

103.   Declare, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, the Plaintiff is prevailing party, and that the position of the government in this action was not substantially justified and that there are no special circumstances that make an award of costs and reasonable attorneys' fees to Plaintiff unjust;

104.   Award Plaintiff its reasonable fees, costs, expenses, and disbursements, including attorneys' fees, associated with this litigation pursuant to 28 U.S.C. § 2412; Section 11 of the ESA, 16 U.S.C. § 1540(g)(4);

105.   Grant such other and further relief as the Court may deem just and proper.

Dated this 14th day of August, 2018.


Respectfully Submitted,


    /s/ Thomas C. Buchele    
Thomas C. Buchele, CSB No. 129657
Earthrise Law Center
T: (503) 768-6736
E: tbuchelelclark.edu

Margaret Hall, CSB No. 293699
Environmental Defense Center
T: (805) 963-1622
E: mhall@environmentaldefensecenter.org